# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIDERIO GARCIA YBARRA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:15-cv-00639-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 14, 17, 18) |

**I.**

**INTRODUCTION**

Plaintiff Desiderio Garcia Ybarra ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from diabetes mellitus; hypertension; bronchial asthma; history of hepatitis C; history of seizures; lower back pain; major depressive disorder, single episode with psychotic features; and polysubstance abuse. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 8.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on May 9, 2013. (AR 72, 90.) Plaintiff's applications were initially denied on August 9, 2013, and denied upon reconsideration on May 2, 2014. (AR 124-128, 131-135.) Plaintiff requested and received a hearing before Administrative Law Judge Cynthia Floyd ("the ALJ"). Plaintiff appeared for a hearing on October 21, 2014. (AR 26-71.) On November 14, 2014, the ALJ found that Plaintiff was not disabled. (AR 7-20.) The Appeals Council denied Plaintiff's request for review on February 18, 2015. (AR 1-3.)

### A. Relevant Hearing Testimony

Plaintiff testified at the October 21, 2014 hearing. (AR 31-61.) Plaintiff was born on November 9, 1961. (AR 31.) Plaintiff was 52 years old on the date of the hearing. (AR 32.) Plaintiff was 5 feet 11 inches tall and weighed 243 pounds on the date of the hearing. (AR 32.) Plaintiff's normal weight is 253 pounds. (AR 32.) Plaintiff is right handed. (AR 33.)

Plaintiff lives in an apartment with his wife. (AR 32.) Plaintiff is receiving food stamps and his wife works in a warehouse doing shipping and receiving. (AR 33.) Plaintiff does not have a driver's license due to child support issues and a DUI he received in the 90s. (AR 33.) Plaintiff gets around by bicycle or he takes the bus. (AR 34.) Plaintiff rides his bicycle every day and gives rides to his grandchildren. (AR 34.) Plaintiff gets along fine with his grandchildren as long as he takes his medication. (AR 34.) If he does not take his medication he gets frustrated and angry. (AR 34.)

Plaintiff completed the tenth grade. (AR 35.) He has not had any vocational training or certifications. (AR 35.) Plaintiff last did part time seasonal work from 2008 through 2010. (AR 36.) Plaintiff worked scraping raisins off a tray onto a conveyor belt. (AR 36.) In this job, Plaintiff would lift, carry, push, pull or otherwise handle fifty pounds. (AR 37.) Plaintiff would also sweep, and remove leaves, branches, and rotten grapes before they ran through the dehydrator. (AR 37.) Plaintiff also did the same tasks with prunes. (AR 37-38.)

In 2007 and 2008, Plaintiff did production work boxing items for different companies through a placement agency. (AR 38.) In this position he would handle thirty to thirty-five pounds. (AR 39.) He worked for a different temp agency in 2007 doing similar work. (AR 39.) In 2006, Plaintiff worked for a company pulling plastic from a conveyor belt to recycle it from the other trash. (AR 40.) Plaintiff would handle twenty-five to forty pounds in this position. (AR 40.) The last year that he worked Plaintiff received unemployment. (AR 41.) During that period of time, Plaintiff was looking for work. (AR 41.) Plaintiff put in applications but never got called for a job. (AR 41.) He has not applied for any jobs since 2012. (AR 42.)

Plaintiff was in prison from 1996 to 1997. (AR 43.) He went back three times for violations. (AR 43.) The last time he was in prison was around 2002. (AR 44.) The violations were drug related. (AR 44.)

Plaintiff is unable to work because he hears voices. (AR 42.) Plaintiff used drugs to see if they would make the voices stop but they did not and he ended up in the hospital. (AR 42.) The voices tell Plaintiff that he is worthless, that people are laughing at him, and when he worked he would yell out which got him in trouble. (AR 42-43.) He was embarrassed to tell his supervisor that he was yelling because of the voices. (AR 43.) The voices have gotten worse. (AR 43.)

Plaintiff takes medication as it is prescribed. (AR 45.) The medication Plaintiff takes helps, but he still hears the voices. (AR 43.) The medication helps calm Plaintiff down and helps his depression. (AR 43.) When Plaintiff takes his medication he does not get angry, impatient or frustrated and he can converse normally. (AR 46.) If he does not take his medication then he is angry and becomes violent. (AR 46.) Plaintiff takes his medication in the morning and at night. (AR 46.) About an hour and half after he takes his medication he gets drowsy and he has to go lie down and sleep for two, three, or four hours during the day. (AR 45, 46.) Plaintiff's sister manages his medication because his wife and sister are afraid he might try to overdose on the medication. (AR 45.) Plaintiff still hears the voices constantly every day when he is taking his medication but it does help. (AR 47.) If Plaintiff tries to block the voices out they become more "rowdy." (AR 48.) Plaintiff will argue with the voices, not all the time,

1 but every day.  (AR 48.)  The voices sound like young kids telling him stuff.  (AR 49.)

2        Plaintiff does not take any medication for his hepatitis C.  (AR 60-61.)  The doctor told
3 him that since he is not using drugs the hepatitis will sometimes go away by itself.  (AR 61.)
4 Plaintiff had seizures fifteen to twenty years ago.  (AR 61.)  Plaintiff had an asthma attack a
5 couple days prior to the hearing and took an inhaler.  (AR 61.)

6        Plaintiff cleans, mops, sweeps, cleans the tabletops, and washes dishes.  (AR 49.)
7 Plaintiff can mop for ten to fifteen minutes and then stops because the voices tell him he looks
8 like a wuss and call him names because he is doing a girl's job.  (AR 45-50.)  Plaintiff will take a
9 break for ten to twenty minutes where he will sit down and watch television to distract him from
10 the voices.  (AR 50.)  After that he will get up and do another activity.  (AR 50.)  Plaintiff goes
11 to the grocery store to get things for himself but no longer goes with his wife to do grocery
12 shopping because he does not like to be around people.  (AR 51.)  Plaintiff feels like the people
13 are looking at him and talking about him so he goes out and sits in the car.  (AR 51.)

14        Plaintiff has friends but does not associate with them very much.  (AR 51.)  Plaintiff stays
15 away from his friends because he gets angry real fast.  (AR 52.)  Plaintiff feels sad almost every
16 day.  (AR 52.)  When he gets sad, Plaintiff goes to his room and sits there because he does not
17 want to associate with anyone, even his family.  (AR 52.)  Plaintiff does this once or twice a day
18 and stays in his room for a couple hours.  (AR 52-53.)  Plaintiff feels better when he goes to his
19 room.  (AR 53.)  Plaintiff cries when he feels sad.  (AR 53.)  Plaintiff can watch television for
20 twenty minutes before he has to stop because he hears the voices again.  (AR 53.)  Plaintiff
21 cannot watch an entire television program.  (AR 53.)

22        Plaintiff does not take a shower every day because sometimes when he is in the shower
23 he hears voices telling him he should drown himself.  (AR 54.)  Plaintiff has suicidal thoughts
24 every day.  (AR 54.)  Plaintiff has told his doctor's this and they tell him to sit down and
25 meditate or something to relax.  (AR 54-55.)  Plaintiff goes outside and walks around the block
26 once in a while.  (AR 55.)  Mainly he goes out around the carport in the alley.  (AR 55.)  Plaintiff
27 feels better when he rides his bike because he got exercise.  (AR 55.)  Plaintiff thought that he
28 ate less when he was depressed but his sister said he eats more.  (AR 55-56.)  Plaintiff has gained

1  weight since he went on the medication.  (AR 57.)  Plaintiff weighed 220 and has gained weight
2  over the last few years.  (AR 56.)  Plaintiff used to drink a lot so he weighed 250.  (AR 56.)  He
3  lost weight when he started doing drugs.  (AR 57.)  Since he went off illegal drugs he has gained
4  weight.  (AR 57.)

5  Plaintiff last did illegal drugs in December of 2013.  (AR 57.)  He was in an outpatient
6  drug program called New Connections at the recommendation of his probation officer.  (AR 57.)
7  Plaintiff goes to the program three times per week.  (AR 57.)  It is a group program and they talk
8  about their problems.  (AR 57-58.)  There are anywhere from eight to ten people in the group.
9  (AR 58.)  Plaintiff goes to the program to stay clean but he does not like being around people and
10 talking to them.  (AR 58.)  Plaintiff only talks to the lady.  (AR 58.)  Plaintiff finds the program
11 to be helpful.  (AR 58.)  Plaintiff has a random drug test once a month in the program.  (AR 59.)
12 He has not had any dirty tests.  (AR 59.)

13 Plaintiff also goes to two or three AA or NA meetings outside the program on the
14 weekends.  (AR 59.)  Plaintiff sits away from people at the meetings.  (AR 60.)  They call on him
15 to talk, but he tells them he has nothing to say.  (AR 60.)

16 A vocational expert, Jose L. Chaparro, also testified at the hearing.  (AR 62-69.)

**B.  ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014.
- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 1, 2012.
- Plaintiff has the following severe impairments: major depressive disorder, single episode with psychotic features, and polysubstance abuse.
- Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: Plaintiff is limited

      to simple, routine tasks with occasional public contact; and occasional superficial contact with coworkers and supervisors.

- Plaintiff is capable of performing past relevant work as a hand packager. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from March 1, 2012, through the date of this decision.

(AR 12-20.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that

exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by 1) failing to address his chronic back pain in the opinion; 2) rejecting the opinion of his lay witness, Maria Maciel; and 3) in finding Plaintiff's allegations to be partially credible. Defendant responds that the ALJ 1) had no obligation to consider Plaintiff's back pain as it was not raised in his disability application or by Plaintiff's counsel during the hearing; 2) properly considered that Ms. Maciel's testimony was not

consistent with the medical evidence; and 3) properly assessed Plaintiff's credibility. Plaintiff replies that the ALJ had an obligation to consider Plaintiff's back pain regardless of whether he raised the issue since it was present in the medical records.

**A.     The ALJ Did Not Err by Failing to Address Plaintiff's Chronic Back Pain**

In this instance, Plaintiff did not raise his back pain as a disabling impairment at the administrative level, but argues that the ALJ was still required to address his chronic back pain at step two to determine if he had any severe impairments. Plaintiff argues that references in the medical record to chronic back pain are significant probative evidence that the ALJ was required address.

Defendant argues that Plaintiff did not raise his back pain as a disabling impairment during the administrative process and therefore did not preserve the issue for appeal. Defendant points out that Plaintiff was represented by counsel who never raised this issue during the administrative hearing.

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The burden is on the claimant to prove that he is disabled at steps one through four, at step five the burden shifts to the Commissioner to show that there are a significant number of jobs in the national community that the claimant can perform. Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1222 (9th Cir. 2009).

As described above, at step two the ALJ is to consider the medical severity of the impairments to determine if they meet the durational requirements under the Act. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.152(c). Basic work activities are the abilities and aptitudes necessary to do most jobs. 20 C.F.R. §404.1521(b). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to

do basic work activities.' " Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).

Plaintiff contends that the ALJ had to address his chronic back pain regardless of whether he raised the issue because the diagnosis was in the medical record. The Ninth Circuit recently held in an unpublished case that "[t]he existence of some evidence in the medical records regarding these conditions is not sufficient to have put the ALJ and the Appeals Council on notice that [the claimant] claimed specifically that these conditions constituted severe impairments." Harshaw v. Colvin, 616 F. App'x 316 (9th Cir. 2015).[2] There is no dispute that Plaintiff did not raise his back pain during the administrative proceedings. The Ninth Circuit has held that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999).

During the October 21, 2014 hearing, Plaintiff's counsel gave the following opening statement.

> Your Honor, it's my position that claimant suffers from a combination of severe physical and mental impairments. He has been diagnosed with diabetes, Exhibit 11-F/4; hepatitis C, 11-F/4; and hypertension, 11-F/4. The main impairments are his mental impairments, which include major depressive disorder, single episode severe with psychotic features, 12-F/13; polysubstance dependence in remission since approximately December of 2013, 9-F/4.
>
> And based on that combination, Your Honor, it would be my position that Steps 4 and 5 of the sequential evaluation, the claimant would not be able to perform any of his past relevant work or any other substantial gainful activity on a regular and consistent basis. This would be due to significant non-exertional limitations, which would include the inability to perform simple tasks or detailed tasks because of his impaired memory, impaired concentration, poor social skills, depressive symptoms, anger issues, as well as his nervousness and poor concentration, the is 7-F/6.
>
> And he would also be unable to accept instructions or performing activities and maintaining regular attendance or be able to deal with stress in the workplace and, and again, I took that from 7-F/6. And I'd ask that you take all of that into consideration.

(AR 30-31.)

---

[2] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. 9th Cir. R. 36-3(b).

9

When the ALJ asked Plaintiff to tell him "what prevents you from working and why you feel you can't work[,] Plaintiff did not raise any physical limitations. He discussed the voices that he hears. (AR 42-43.) Counsel asked Plaintiff about side effects of his medication, his need for monitoring of his medications, his anger issues, and the voices that he hears. (AR 43-49.) Upon questioning on the types of things that Plaintiff is able to do, he responded that he can mop for 10 to 15 minutes before the voices start bugging him and then he has to stop. (AR 49-50.) He goes and watches television for 10 to 20 minutes to distract him from hearing the voices. (AR 50.) Plaintiff stopped going grocery shopping with his wife because he does not like to be around people and he thinks they are talking about him. (AR 51.) Counsel inquired about his inability to function due to feeling sad. (AR 52-53.) Plaintiff can only watch television for about 20 minutes before the voices start again and he goes to find something else to get the voices to leave him alone. (AR 53.) Plaintiff does not like to shower because the voices tell him to drown himself and he has suicidal thoughts almost every day. (AR 54.) Counsel elicited testimony regarding inconsistent statements on Plaintiff's weight and his drug treatment. (AR 55-60.)

During the hearing, the ALJ questioned Plaintiff regarding his hepatitis C, history of seizures, and asthma. (AR 60-61.) Plaintiff did not raise any other physical issues during the hearing.

Plaintiff's counsel did not raise the issue of his back and indicated in her opening statement that Plaintiff's main impairment was due to his mental health issues. This was also the focus of the testimony elicited during the hearing. "Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed." Solorzano v. Astrue, No. ED CV 11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012). If Plaintiff was alleging disability due to his chronic back pain, he had an obligation to raise the issue during the administrative proceedings to provide the Commissioner with the opportunity to consider and address the issue. Here, Plaintiff did not provide any notice to the Commissioner that he was alleging he was limited in his ability to work due to back pain.

Plaintiff argues that the ALJ did not resolve the conflict in the medical evidence regarding Plaintiff's back pain. However, the medical record does not contain any limitations due to Plaintiff's back condition. Plaintiff argues that Dr. Damania did not reference any back pain and his physical examination did not result in any findings of back pain, therefore the ALJ was required to resolve this apparent ambiguity. However, Dr. Damania's report does not contain any ambiguity. Dr. Damania examined Plaintiff's back and found "no tenderness to palpation in the midline or paraspinal areas. Straight leg raising is negative at 90 degrees. Laseque's sign is negative. There is no muscle spasm and muscle tone appears to be equal throughout." (AR 385.) Range of motion in Plaintiff's back was within normal limits. (AR 386.)

Plaintiff argues that the mere existence of the notations of chronic back pain are sufficient to require the ALJ to address whether this was a severe limitation, however, review of the record provides reasons why Plaintiff did not raise the issue. While the record does note a history of chronic back pain and occasional notations of pain, the record also indicates no findings of back pain on physical examination, even on those occasions where Plaintiff self-reported pain. (AR 283, 287, 323, 343, 450.) The record also notes normal range of motion in Plaintiff's back whether or not tenderness was found. (AR 301, 317, 341, 357, 398, 402, 410, 424.) On July 29, 2013, the record notes, "Pt has mild chronic lower thoracic/upper lumbar back ttp but no point ttp or midline vertebral ttp; ROM in back in normal and no skin changes. Pt can flex to touch toes with minimal pain." (AR 402.) On this date, Plaintiff reported that his back pain is chronic and unchanged from the past 20 years. (AR 403.) These notations would indicate that the failure to raise the issue was because Plaintiff's back pain was mild and did not limit his physical ability to work.

The ALJ did not err by failing to address Plaintiff's chronic back pain as Plaintiff did not raise the issue during the administrative proceedings.

### B. The ALJ Did Not Err in Finding Plaintiff's Testimony Only Partially Credible

Plaintiff contends that the ALJ erred in finding that he allegations were only partially

11

credible. Defendant counters that the ALJ properly considered Plaintiff's testimony and provided three valid reasons for the adverse credibility finding.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony

by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

### 1. Daily Activities

Plaintiff contends that the ALJ erred because the fact that Plaintiff engages in normal activities does not detract from his allegations that he is disabled, and the ALJ did not make any specific findings of transferability. Defendant replies that the ALJ did not draw the conclusion that Plaintiff's daily activities were equivalent to work activities, but relied on Plaintiff's statements regarding his activities to assess the credibility of his allegations regarding the extent of his limitations.

There are two ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination: if the claimant's activity contradicts his testimony or if the claimant's activity meets the threshold for transferable work skills." Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014). Here, the ALJ did not find that Plaintiff's activities met the threshold for transferable work skills, but that Plaintiff "alleged daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (AR 14.) The ALJ found that Plaintiff was able to take care of his own personal hygiene, perform household chores, watch television, riding his bicycle, folded clothes, washed laundry, did the dishes and yard work, and gives his grandchildren rides on his bicycle. (AR 14, 34-35, 49, 308, 391, 488.) The ALJ properly considered that Plaintiff's daily activities contradict his claims of a totally debilitating impairment. Molina, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.")

### 2. Medical Evidence

Plaintiff contends that the ALJ erred by picking out an isolated visit on which he reported that he was doing much better and not hearing voices to discredit Plaintiff nor does the evidence support a conclusion that Plaintiff's psychotic features appear to be drug induced. Defendant counters that the ALJ thoroughly reviewed the medical evidence to determine that Plaintiff's

testimony regarding his symptoms was only partially credible.

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). While Plaintiff argues that the ALJ relied on one occasion in which the medical record indicates he was doing better and did not hear voices, the record shows otherwise. The ALJ noted that Plaintiff had a history of drug use, including intravenous drug abuse of heroin and there are multiple emergency room visits due to Plaintiff's heroin use. (AR 14.) The objective findings from these emergency room visits show a normal mood and affect, behavior and judgment. (AR 15, 284, 292, 297, 305, 310, 319, 337, 342, 351.) Plaintiff was prescribed Zoloft in August 2012 but was non-complaint with his medication. (AR 15, 316, 354.) Plaintiff restarted Zoloft on November 14, 2013, and the record demonstrates that he was not compliant with his medication. (AR 422, 480, 489, 531, 591, 697, 699, 701, 703, 705, 707, 709, 710).

The ALJ found that Plaintiff's credibility was weakened because his psychotic symptoms appear to be drug induced according to the attending physicians, and the record contradicts his statements that he still hears voices and has side effects from his medication. (AR 18.) The ALJ considered that the medical record shows Plaintiff had an altered mental state after a suicide attempt on November 28, 2013 which the record notes is likely due to drug use. (AR 15, 448, 449, 541, 550, 557.) Plaintiff was diagnosed with major depressive disorder, recurrent, severe, with psychotic features and polysubstance dependence. (AR 15, 591.) Treatment included medication therapy which Plaintiff responded well to when he was compliant. (AR 15, 487, 697, 699, 701, 705.) Upon discharge, Plaintiff denied any mood swings, having suicidal or homicidal thoughts, delusions or hallucinations, or any side effects from medications. (AR 16, 592.) The record notes that heroin was the likely cause of the altered mental state. (AR 16, 449.)

Review of the records following this incident shows generally normal mental examination except for occasional stuttering speech and occasional anxious or depressed mood with no hallucinations or delusions. (AR 16, 478, 480, 697, 699, 701, 703, 705, 707, 709.) There are no suicidal or homicidal ideations. (AR 16, 478, 480, 489, 697, 699, 701, 703, 705,

707, 709.) Plaintiff reported that he was no longer hearing voices and that he only occasionally got mad at his grandchildren. (AR 16, 697.) Plaintiff was diagnosed with major depressive disorder, single episode, severe with psychotic features. (AR 16, 697, 699, 701, 703, 705, 707, 709.) While Plaintiff was assessed with a GAF of 50, the most recent objective findings were all normal, including organized thoughts, insight, judgment, mood, affect, cognition, motor activity and speech. (AR 16, 478, 480, 697, 699, 701, 703, 705, 707, 709.)

Relevant to Plaintiff's mental health impairments, the medical record shows that Plaintiff has been diagnosed with depression and major depressive disorder (AR 314, 316, 328, 330, 354, 440, 446, 484, 531, 656, 689, 692); psychiatric problems (AR 387, 484); substance-induced psychotic disorder (AR 392); delirium and altered mental state (AR 435, 656). Dr. Khalifa diagnosed Plaintiff with opioid dependence in remission; amphetamine dependence in remission; history of cocaine dependence; and drug-induced psychotic disorder with hallucinations. (AR 489.) Dr. Michiel diagnosed Plaintiff with opioid dependence, cocaine dependence in early remission, and substance-induced psychotic disorder. (AR 392.) The record does note some depression (AR 316, 353, 391, 404, 483, 590); but generally reflects normal psychological findings (AR 288, 292, 297, 305, 310, 319, 323, 337, 342, 343, 351-352, 403, 406, 408, 410, 417, 480, 478, 488, 518, 699, 701, 703, 705, 707, 709). While there are occasional reports that Plaintiff is reacting to internal stimuli (AR 473, 475), there are also findings that Plaintiff was not reacting to internal stimuli (AR 392, 488) and no objective findings of hallucinations upon examination (AR 697, 699, 701, 703, 705, 707, 709).

The ALJ properly considered this evidence in weighing Plaintiff's credibility and substantial evidence in the record supports the ALJ's findings that Plaintiff's mental health symptoms are not as severe as he alleges and that his psychotic symptoms were drug induced.

3. <u>Work History</u>

Plaintiff argues that under the circumstances here, his minimal work history does not constitute a clear and convincing reason for the ALJ's negative credibility finding. Plaintiff argues that Plaintiff testified at the hearing that he had problems maintaining past employment due to talking back to the voices on the job.

The ALJ considered that Plaintiff had only four years of substantial gainful activity in the past fifteen relevant years and stopped working two years prior to the alleged onset of disability date. (AR 18, 197-202, 210.) An ALJ may properly consider that a claimant has shown little propensity to work in considering the claimant's credibility. Thomas, 178 F.3d at 959. The ALJ was entitled to determine from Plaintiff's limited work history prior to the alleged disability date that he lacked motivation to work. Id.

Further, although Plaintiff testified at the hearing he had problems maintaining a job to hearing voices, he also stated that he stopped working due to the work being seasonal two years prior to his disability onset date. (AR 210, 41-42.) Testimony that the claimant quit working because he was laid off, rather than due to a disability, is a "specific, cogent reason" to discredit the claimant's testimony. Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001), as amended (Nov. 9, 2001). The ALJ properly considered that Plaintiff stopped working due to the seasonal nature of the work and not due to any impairment. (AR 18.)

The ALJ provided "clear and convincing reasons" for the adverse credibility finding that have substantial support in the record. Carmickle, 533 F.3d at 1160.

**C.   Lay Witness Testimony**

Plaintiff contends that the ALJ is prohibited from rejecting or discrediting lay witness testimony as not supported by the medical record. Defendant concedes that the ALJ erred in rejecting the lay witness testimony because she is not medically trained, but replies that inconsistency with the medical evidence is a germane reason to reject Ms. Maciel's statement.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout, 454 F.3d at 1053; 20 C.F.R. § 404.1513(d)(4). "Lay witness testimony is competent evidence and cannot be disregarded without comment." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must give specific reasons germane to the witness in discounting the lay witness testimony. Stout, 454 F.3d at 1056. ). If the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is

similarly not credible.  Molina, 674 F.3d at 1114.

The record includes a letter dated September 20, 2014, from Maria Maciel.  (AR 278.) The letter states:

> To Whom and [sic] May Concern:
>
> I Maria Maciel, I've known Desiderio Ybarra, for over 40 years I've been a close friend of the family, and what I know about Desiderio's Mental Health I see him as a very nervous person and he get's [sic] anxiety noise seem to bother him and he hear's voices and he get very upset at times sometime's he doesn't even want to shower he will get upset and he will fight with us so we try to calm him down sometime's we talk to him and he doesn't answer so we just deal with him and sometime's he can be good but he has always been a very nervous person since been a child.  But I see that he has worsen.

(AR 278.)

The ALJ stated that "significant weight cannot be given to the witness' statement because it is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.  For example, there were generally normal mental status examinations when medicinally compliant and claimant's altered mental state was due to drug abuse."  (AR 18.) Citing Bruce v. Astrue, 557 F.3d 1113 (9th Cir. 2009), Plaintiff contends that the Ninth Circuit does not permit an ALJ to reject lay witness testimony solely because it is not supported by the medical evidence.  Defendant argues that Bruce is grossly inconsistent with other well-established published Ninth Circuit cases, citing Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009); Blodgett v. Comm'r, 534 Fed.Appx. 608, 610-11 (9th Cir. 2013) (unpublished); Rusten v. Comm'r, 468 Fed.Appx. 717, 719 (9th Cir. 2012) (unpublished).  The Court declines to address this apparent conflict because it finds any error in providing reasons germane to Ms. Maciel's statements would be harmless.

While Plaintiff argues that any error in rejecting the opinion was not harmless, the Court disagrees.  Although Plaintiff argues that Ms. Maciel's statements corroborate Plaintiff's testimony regarding the functional aspects of his mental impairments, Ms. Maciel's opinion does not address any specific limitations, but generally describes symptoms which she has observed.

Ms. Maciel states that noise bothers Plaintiff, he hears voices, gets upset at times, sometimes he is good, but has always been a nervous person and has worsened. The ALJ considered these alleged symptoms in determining that Plaintiff has a severe mental impairment and in the residual functional capacity assessment. Ms. Maciel's statement did not address the frequency or severity of Plaintiff's symptoms. Further, the reasons provided by the ALJ to discredit Plaintiff's statements on the severity of his symptoms would equally apply to Ms. Maciel's statements.

The Ninth Circuit has held that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." Molina, 674 F.3d at 1117. Where the ALJ has provided germane reasons to reject similar testimony, the court cannot ignore the ALJ's reasoning and reverse merely because he did not clearly link his determination to those reasons. Molina, 674 F.3d at 1121.

In this instance, Ms. Maciel did not describe any limitations, but merely stated symptoms about which Plaintiff had also testified. The reasons that the ALJ provided for discrediting Plaintiff's testimony as to the severity of his symptoms would apply with equal force to Ms. Maciel's testimony. For that reason, the Court finds that if the ALJ erred and did not provide germane reasons to reject Ms. Maciel's testimony it would be harmless error.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err by failing to address Plaintiff's chronic back pain in the opinion, by rejecting the opinion of Plaintiff's lay witness, or by finding Plaintiff's allegations to be partially credible.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Desiderio Garcia Ybarra. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **June 22, 2016**

UNITED STATES MAGISTRATE JUDGE